ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| TODD SWANSON Y OTROS<br><br>APELANTE<br><br>V.<br><br>MUNICIPIO AUTONOMO DE SAN JUAN Y OTROS<br><br>APELADOS | KLAN202500138 | Apelación procedente del Tribunal de Primera Instancia, Sala de Superior de San Juan<br><br>Caso Número: SJ2021CV00352<br><br>Sobre: MANDAMUS |

Panel integrado por su presidente, el Juez Salgado Schwarz, el Juez Monge Gómez y la Juez Lotti Rodríguez[1].

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico a 26 de agosto de 2025.

Comparece la parte apelante Sr. Todd Swanson, María Swanson y Robert Byron Villacres Hayes (en adelante los apelantes), mediante un recurso de apelación y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de San Juan (en adelante el TPI), el 23 de enero de 2025 y notificada el mismo día. Mediante la misma, el foro primario desestimó con perjuicio el recurso de *Mandamus* presentado por los aquí apelante.

**I.**

El 20 de enero de 2021, los apelantes Todd Swanson y María Swanson presentaron una demanda de *Mandamus* en el TPI, mediante la cual solicitaron que se le ordenara al Municipio de San Juan (en adelante Municipio o apelado), que le notificaran la Resolución Núm. 63 de 11 de junio de 2018[2], emitida para confirmar la Resolución Núm. 161 de 13 de mayo de 1998[3]. En virtud de

---

[1] Conforme la OATA2025-065 del 6 de mayo de 2025, mediante la cual se asignó a la Juez Glorianne M. Lotti Rodríguez en sustitución del Hon. Félix Figueroa Cabán.
[2] Apéndice 23 del *Recurso de Apelación*, págs. 262-267.
[3] *Id.*, págs. 268-276.

dichas Resoluciones el Municipio autorizó y posteriormente confirmó el control de acceso de las urbanizaciones Santa Teresita y Park Boulevard. En dicho recurso la parte apelante alega ser residente de la Urbanización Park Boulevard y aseguró que la Resolución Núm. 63 de 11 de junio de 2018 nunca le fue notificada.

El 4 de marzo de 2021, la parte apelante presentó una solicitud de permiso para enmendar el *Mandamus* con el propósito de incluir como demandante al Sr. Robert Byron Villacres Hayes.

Luego de varios trámites procesales, el 21 de abril de 2021, el TPI emitió *Sentencia* desestimando el recurso presentado. En su sentencia, el foro primario adujo que no se cumplían a cabalidad con los requisitos para la expedición del recurso extraordinario de *mandamus*, debido a la ausencia de un deber ministerial, y que el recurso no procedía por no ser el vehículo procesal adecuado para que se obligara al municipio o a una agencia a notificar a una parte.

Inconforme con esa determinación, se presentó un recurso de apelación en el Tribunal de Apelaciones, mediante el caso KLAN202100458. Este foro emitió *Sentencia* el 28 de octubre de 2021, cuyo mandato final fue unido al expediente el 30 de septiembre de 2022, en la cual revocó la *Sentencia* apelada y devolvió el caso al TPI para que el foro primario "luego de llevar a cabo una vista evidenciaría y adjudique el valor correspondiente valor probatorio que le merezca la prueba que ambas partes tengan a su haber presentarle, pase juicio respecto a si los apelantes poseen legitimación activa para entablar el recurso y si satisficieron todos los otros requisitos necesarios para que proceda expedir un *mandamus*"[4].

Así las cosas, luego de múltiples incidencias, el TPI celebró la vista en su fondo el 24 de octubre de 2024. A la vista comparecieron

---

[4] Apéndice 59 del *Recurso de Apelación*, págs. 440-453.

como testigos el aquí apelante Todd Swanson, el Sr. Jerry Luis Mas Negrón, como testigo del Municipio, y la Sra. Magda Badrena Rumple, como testigo de la Asociación Santa Teresita Park Boulevard (en adelante Asociación o apelada). Posteriormente, habiendo evaluado la prueba testifical y documental presentada en la vista evidenciaria, el TPI emitió *Sentencia* el 23 de enero de 2025, notificada en la misma fecha, mediante la cual desestimó con perjuicio el recurso de *Mandamus* presentado.

En su *Sentencia*, el TPI formuló, entre otras, las siguientes determinaciones de hechos relacionadas con el aquí apelante:

1. El demandante Todd Swanson reside y es titular registral de la propiedad inmueble ubicada en la Calle Park Boulevard #2220, San Juan.
   a. Adquirió la propiedad en noviembre de 2015 y comenzó a residir en el año 2016.
   b. Antes de dicha fecha, no era residente de Puerto Rico.
   c. Luego de comenzar a residir en la propiedad, la Asociación cerró portones y accesos.
      …
      …
   f. Su residencia no es parte del control de acceso, pues se encuentra en la calle Park Boulevard #2220. Dicha calle no queda afectada por el control de acceso.
   g. El demandante tiene acceso libre hacia y desde su residencia a través de las calles Park Boulevard y Laurel.
      …
   i. No existe control de acceso en la calle Park Boulevard.
   j. El demandante no es miembro de la Asociación pues su propiedad tampoco es parte de la Asociación ni está ubicada en el cierre de la urbanización. Tampoco asiste a reuniones de la Asociación. Al igual que el resto de los residentes de dicha calle, y tampoco formaron parte de los propietarios cuyos votos (para endosar o no el control de acceso) se tomarían en cuenta para la aprobación del referido control de acceso.
   k. Tampoco votó por el control de acceso en el 1998, fecha en que el Municipio aprobó dicho control de acceso. Tampoco asistió a las vistas para contar los endosos durante los años 2010 y 2011, ni fue parte en el litigio en el que se ordenó la contabilización de dichos endosos.

El foro primario concluyó que los promoventes carecían de legitimación activa debido a que: su propiedad no estaba dentro del

área afectada por el control de acceso, no son parte ni miembros de la Asociación y no solicitaron intervenir en el trámite administrativo en el año 2015 o 2016, cuando comenzaron a residir en el inmueble. Por lo tanto, el TPI desestimó el recurso con perjuicio.

Inconforme, el 20 de febrero de 2025, la parte apelante presentó el recurso ante nos y plantea los siguientes errores:

**ERRÓ EN DERECHO EL TRIBUNAL DE PRIMERA INSTANCIA EN LA APRECIACIÓN DE LA PRUEBA PRESENTADA.**

**ERRÓ EN DERECHO EL TRIBUNAL DE PRIMERA INSTANCIA AL NO HABER HECHO DETERMINACIONES SOBRE LA PRUEBA PRESENTADA POR LOS DEMANDANTES-APELANTES PARA CUMPLIR CON LO REQUERIDO POR EL TRIBUNAL DE APELACIONES EN SU SENTENCIA DE 28 DE OCTUBRE DE 2021 DONDE SE DEBÍA ESTABLECER EL GRADO DE LEGITIMACIÓN ACTIVA DE LA PARTE APELANTE PARA QUE EL MUNICIPIO LE NOTIFICARA LA RESOLUCIÓN NÚM. 63 DE 11 DE JUNIO DE 2018.**

En la misma fecha, la parte apelante presentó una *Moción en solicitud de autorización para presentar transcripción de la prueba oral presentada a tenor con la Regla 76 del Reglamento del Tribunal de Apelaciones*. El 28 de febrero de 2025, notificada el 7 de marzo de 2025, se emitió Resolución donde se le concedió a los apelantes un término de treinta (30) días para que presentara la transcripción de la prueba oral. Así las cosas, el 21 de marzo de 2025, la parte apelante presentó la transcripción de la prueba oral y el 21 de abril de 2025 presentó su *Alegato Suplementario*.

Por su parte, tanto el Municipio, como la Asociación, presentaron individualmente sus respectivos *Alegato[s] en oposición* el 27 de mayo de 2025.

Con el beneficio de la comparecencia de las partes, el derecho y la jurisprudencia aplicables, resolvemos.

**II.**

**A. Apreciación de la prueba**

Es norma conocida que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, los tribunales apelativos no deben intervenir para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el foro primario. Regla 42.2 de Procedimiento Civil, *supra; Peña Rivera v. Pacheco Caraballo,* 213 DPR 1009, 1024 (2024); *Ortíz Ortíz v. Medtronic,* 209 DPR 759, 778 (2022); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). Incurre en pasión, prejuicio o parcialidad el juez "que actúe movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que someta prueba alguna". *Ortíz Ortíz v. Medtronic, supra,* pág. 779 (citando a *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013)). En cuanto al error manifiesto, este ocurre cuando el foro revisor está convencido de que se cometió un error "porque existe un conflicto entre las conclusiones y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". *Méndez v. Morales*, 142 DPR 26, 36 (1996).

Ahora bien, la llamada deferencia judicial está predicada en que los jueces del TPI "están en mejor posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo". *Peña Rivera v. Pacheco Caraballo, supra,* pág. 1025 (citando a *Ortíz Ortíz v. Medtronic, supra,* pág. 779). De manera que, la norma general es que, si la actuación del TPI no está desprovista de una base razonable y no perjudica los derechos sustanciales de las partes, debe prevalecer su criterio dado que es a

quien le corresponde la dirección del proceso. *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

## B. Legitimación Activa

Nuestro Tribunal Supremo reiteradamente ha reconocido que el principio de justiciabilidad requiere la existencia de un caso o controversia real para que los tribunales puedan ejercer válidamente el Poder Judicial. *Hernández, Santa v. Srio. de Hacienda*, 208 DPR 727, 738 (2022). En ese sentido, se ha determinado que una controversia no es justiciable cuando: (1) se procura resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva, o (5) se intenta promover un pleito que no está maduro. *Bhatia Gautier v. Gobernador*, 199 DPR 59, 68-69 (2017); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 932 (2011); *Noriega v. Hernández Colón*, 135 DPR 406, 421-422 (1994).

La legitimación activa se ha definido como la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante. *Bhatia Gautier, supra*, pág. 69, citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho procesal civil*, San Juan, Pubs. LexisNexis de Puerto Rico, Inc., 2017, pág. 121; J.A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 1ra ed. rev., Colombia, [s. Ed.], 2012, pág. 132. El propósito de esta doctrina es demostrarle al foro adjudicador que el interés del demandante en el pleito es de tal índole que, con toda probabilidad, proseguirá su causa de acción de manera vigorosa. *Sánchez et al. v. Srio. de Justicia et al.*, 157 DPR 360, 371 (2002); *Hernández Agosto v. Romero Barceló*, 112 DPR 407, 413 (1982).

Para determinar si una parte posee legitimación activa, debe cumplir con los siguientes requisitos: 1) haber sufrido un daño claro y palpable; 2) que el referido daño sea real, inmediato y preciso, y no abstracto o hipotético; 3) que exista una conexión entre el daño sufrido y la causa de acción ejercitada; y 4) que la causa de acción surja bajo el palio de la Constitución o de una ley. *Lozada Tirado, et al. v. Testigos Jehová*, 177 DPR 893, 924 (2010); *Col. Peritos Elec. v. AEE*, 150 DPR 327, 331 (2000); *Asoc. Maestros PR v. Srio. Educación*, 137 DPR 528, 535 (1994).

Le corresponde al promovente probar que cumple con los requisitos antes indicados. *MAPFRE v. ELA*, 188 DPR 517, 532-533 (2013). Además, cabe destacar que, el requisito de legitimación activa debe estar presente en todos los procesos judiciales, ordinarios o extraordinarios, reconocidos en nuestro ordenamiento jurídico, entre ellos el *mandamus*.

### C. Mandamus

El auto de *mandamus* constituye un recurso de carácter altamente privilegiado. Este se dirige a una persona natural, corporación o a un tribunal de inferior jerarquía, con el fin de requerirle el cumplimiento de algún acto que esté dentro de sus atribuciones o deberes. Art. 649 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3421; *Aponte Rosario v. Presidente Comisión Estatal de Elecciones*, 205 DPR 407, 427-429 (2020); *AMPR v. Srio. Educación, E.L.A.*, 178 DPR 253, 263-264 (2010); *Acevedo Vilá v. Aponte Hernández*, 168 DPR 443, 454 (2006); *Báez Galib y otros v. CEE II*, 152 DPR 382, 391-392 (2000). Dicho recurso no otorga autoridad adicional, y la parte a quien obliga deberá tener la facultad de poder cumplirlo. Art. 649 del Código de Enjuiciamiento Civil, *supra*.

En particular, el *mandamus* procede únicamente cuando el peticionario carece de "un recurso adecuado y eficaz en el curso

ordinario de la ley". Art. 651 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3423; *Aponte Rosario v. Presidente Comisión Estatal de Elecciones, supra*, pág. 428. En otras palabras, el propósito del auto no es sustituir los remedios legales existentes, "sino suplir a falta de ellos. Por ejemplo, cuando el peticionario tiene a su disposición el recurso de apelación no procede el *mandamus*". R. Hernández Colón, *Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 853. (citando a *Hernández Agosto v. Romero Barceló*, 112 DPR 407, 418 (1982); *Espina v. Calderón, Juez Superior*, 75 DPR 76 (1953); *Peña v. Flores de Ordoñez*, 58 DPR 772 (1941)).

Asimismo, el acto requerido debe constituir un deber ministerial, es decir, uno que no conlleve el ejercicio de discreción por parte de la autoridad requerida. *Báez Galib y otros v. CEE II, supra*, págs. 403-404. Véase D. Rivé Rivera, *Recursos Extraordinarios*, 2da ed., San Juan, Ed. U.I.A., 1996, pág. 107. Así pues, "el requisito fundamental para expedir el recurso de *mandamus* reside, pues, en la constancia de un deber claramente definido que debe ser ejecutado. Es decir, 'la ley no sólo debe autorizar, sino exigir la acción requerida'". *AMPR v. Srio. Educación, E.L.A., supra*, págs. 263-264. Por ello, la persona perjudicada por la falta de cumplimiento de dicho deber está facultada para solicitar el recurso. *Id.*

### D. Notificación sobre control de acceso

La Ley Núm. 21 de 20 de mayo de 1987, según enmendada, conocida como Ley de Control de Acceso de 1987[5], fue aprobada para autorizar a los municipios de Puerto Rico a conceder permisos o autorizaciones para el control de acceso de las calles en

---

[5] Esta ley fue derogada por la Ley Núm. 107-2020, según enmendada, conocida como el Código Municipal de Puerto Rico, 21 LPRA sec. 7001 et seq. (Código Municipal). No obstante, debido a que los hechos de la presente controversia ocurrieron entre 1995 y 2018, nos referiremos a las disposiciones de la derogada ley y a las de la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como Ley de Municipios Autónomos de Puerto Rico, 21 LPRA sec. 4001 et seq.

urbanizaciones y comunidades residenciales públicas o privadas que tengan un solo acceso o que tengan más de un acceso, sujeto a las limitaciones que allí se establecen. Sobre el particular, la Sección 2 establece que "[e]l Municipio y la Asociación de Residentes estarán obligados a notificar por correo certificado a los residentes sus gestiones relacionadas con el proceso del cierre de las calles". 23 LPRA sec. 64-1.

Por su parte, la Sección 4 de la ley provee el modo en que deberá tramitarse el permiso y autorización para el control de acceso. 23 LPRA sec. 64b. La citada disposición incluye, entre otras cosas, el derecho de solicitar revisión judicial sobre una determinación del municipio con relación a una solicitud de control de acceso. *Id.* En específico, dispone que:

> Toda persona, Asociación de Residentes, urbanizador o desarrollador que no esté de acuerdo con la decisión del municipio sobre una solicitud de permiso de control de acceso, podrá solicitar su revisión judicial dentro de los veinte (20) días siguientes a la fecha de archivo en el municipio de copia de la notificación concediendo la autorización o permiso de control de acceso o del archivo de la declaración jurada adoptando el dictamen preliminar, según sea el caso. El Tribunal emitirá su decisión dentro de los treinta (30) días siguientes a la fecha de la solicitud de revisión. *Id.*

A su vez, a través de la Ley Núm. 21, *supra*, se creó el Reglamento de Planificación Núm. 20 de la Junta de Planificación, Reglamento Núm. 3843 del Departamento de Estado, 20 de enero de 1989, con el propósito de establecer las normas y procedimientos necesarios para que los municipios puedan autorizar el control de tránsito de vehículos de motor en urbanizaciones y comunidades. En la Sección 5.03 de este reglamento se establecen los requisitos procesales que se deben cumplir para presentar la solicitud del permiso. Entre estos requisitos se encuentra el presentar evidencia de haber notificado **sobre la solicitud de permiso a los dueños y residentes de las propiedades que radiquen dentro de una distancia de cien (100) metros de la comunidad**, medida tomando

los puntos más cercanos entre la comunidad y las propiedades circundantes. Sección 5.03 (15) del Reglamento Núm. 20.

En tono similar, la Sección 5.06 establece que, una vez se cumplan con los endosos requeridos para aprobar el control de acceso y el municipio reciba dichos endosos, deberá emitir una resolución con notificación a todas las partes interesadas, autorizando el establecimiento de las facilidades propuestas con las condiciones del dictamen preliminar. Sección 5.06 del Reglamento Núm. 20.

Cónsono con lo anterior, a través de la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, 21 LPRA sec. 4001, conocida como Ley de Municipios Autónomos de Puerto Rico[6], se reconoció como parte de las facultades municipales el poder otorgar autorizaciones para el control de acceso vehicular y de las calles de conformidad con la citada Ley Núm. 21 y sujeto, además, a que:

> …
> (4) Toda resolución aprobando o denegando una solicitud de control de acceso por parte del municipio **será notificada a las partes concernidas** incluyendo en dicha notificación el derecho a solicitar revisión judicial ante el Tribunal de Primera Instancia dentro del término de veinte (20) días de conformidad con lo dispuesto en el Artículo 15.002 de esta Ley. 21 LPRA sec. 4054 (p).

Asimismo, el Artículo 15.002 establece que el TPI tendrá jurisdicción para:

> (a) Revisar cualquier acto legislativo o administrativo de cualquier funcionario u organismo municipal que lesione derechos constitucionales de los querellantes o que sea contrario a las leyes de Puerto Rico.
>
> (b) Suspender la ejecución de cualquier ordenanza, resolución, acuerdo u orden de la legislatura, del alcalde o de cualquier funcionario del municipio que lesione derechos garantizados por la Constitución del Estado Libre Asociado de Puerto Rico o por las leyes estatales.
>
> …

---

[6] Véase nota anterior.

En los casos contemplados bajo las cláusulas (a) y (b) de este inciso, **la acción judicial sólo podrá instarse dentro de los veinte (20) días siguientes a la fecha en que el acto legislativo o administrativo se haya realizado o que la ordenanza, resolución, acuerdo u orden se haya notificado** por el alcalde o funcionario municipal autorizado a la parte querellante por escrito mediante copia y por correo regular y certificado a menos que se disponga otra cosa por ley. Disponiéndose, que el término de veinte (20) días establecido en este Artículo comenzará a decursar a partir del depósito en el correo de dicha notificación; y que la misma deberá incluir, pero sin ser limitativo, el derecho de la parte afectada a recurrir al Tribunal de Primera Instancia, Sala Superior competente; término para apelar la decisión; fecha del archivo en auto de la copia de la notificación y a partir de [qué] fecha comenzará a transcurrir el término.

Es preciso reconocer que, de las disposiciones antes citadas, se puede concluir que para efectos de notificación se considera parte aquella persona que: sea propietario o residente de un inmueble dentro del área de control de acceso, aquella persona que haya asistido a las vistas públicas y haya solicitado expresarse sobre el asunto en consideración, y aquellos miembros del Consejo, Asociación o Junta de Residentes. 23 LPRA sec. 64. Además, se reconoce como parte –para efectos de notificación de la solicitud del permiso de control de acceso– a los dueños y residentes de las propiedades que radiquen dentro de una distancia de cien (100) metros de la comunidad. Sección 5.03 (15) del Reglamento Núm. 20.

De lo anterior se puede concluir que el municipio tiene un deber ministerial de cumplir y velar que se cumplan los requisitos de notificación sobre las gestiones realizadas en torno a una solicitud de control de acceso. La responsabilidad de hacer la notificación varía dependiendo la etapa del proceso en que se encuentre el permiso. Esto es, a la Asociación o Consejo de Residentes se le requiere presentar evidencia ante el municipio de haber notificado la solicitud de permiso a los dueños y residentes de las propiedades que radiquen dentro de una distancia de cien (100) metros de la comunidad. Sección 5.03 (15), *supra.* Mientras que es

responsabilidad del municipio notificar, una vez se haya aprobado o denegado una solicitud de control de acceso, a las partes concernidas. 21 LPRA sec. 4054 (p).

**III.**

Los apelantes sostienen que el TPI erró en derecho al (1) apreciar incorrectamente la prueba presentada y (2) al no haber hecho determinaciones específicas sobre la prueba que, según la Sentencia de este foro en el caso KLAN202100458, eran necesarias para adjudicar el grado de legitimación activa de los apelantes. Veamos.

Del expediente surge que el apelante Todd Swanson es propietario de una residencia ubicada en la Calle Park Boulevard #2220. Dicha calle no forma parte del cierre autorizado para la Urbanización Santa Teresita y Park Boulevard. De la evidencia admitida refleja que su residencia nunca estuvo comprendida dentro del control de acceso aprobado, que nunca ha estado vinculado a la Asociación de Residentes y que, en efecto, su calle continúa siendo de libre tránsito hacia y desde su propiedad. De igual forma, no se acreditó que el cierre de calles afectara su entrada, salida o disfrute de la vivienda.

Asimismo, de la Sentencia apelada surge que el TPI determinó como hecho probado que los anteriores dueños del inmueble adquirido por el apelante Todd Swanson fueron notificados de la vista que se celebró el 28 de mayo de 1996 y las vistas celebradas los días 23 de diciembre de 2010 y 16 de febrero de 2011.[7]

Por otro lado, cabe destacar que de la propia Resolución Núm. 161 del 1998 surge explícitamente quiénes eran las partes a las que el municipio tenía la obligación de notificar la resolución. En ese sentido, la Sección 15 de dicha resolución establece que:

---

[7] Apéndice 1 del Recurso Apelativo, pág. 5.

El Ejecutivo Municipal notificará por correo certificado con copia de esta Resolución a las personas residentes en el área a controlarse, **a los residentes en la periferia a 100 metros** y a los que comparecieron a las vistas públicas, a las personas que hayan expresado su posición por escrito y a los que hayan expresado su interés por escrito de ser notificados y a la Asociación de Residentes que propuso el control de acceso, conforme a la ley.[8]

No obstante, en la Resolución Núm. 63 de 2018 se enmendó esa disposición, excluyendo del requisito de notificación a los residentes en la periferia a 100 metros.[9] Además, se estableció que, en caso de incompatibilidad entre ambas resoluciones, prevalecería lo dispuesto en la de 2018.[10] Por tanto, para el momento en que se aprobó y notificó la Resolución Núm. 63 de 2018, ya no existía obligación de notificar los apelantes por razón de proximidad.

Es preciso aclarar que, aun si diéramos por sentado que la disposición original de 1998 fuera aplicable, lo cierto es que la parte apelante no logró probar ante el TPI que su residencia se encontrara dentro del perímetro de 100 metros contemplado. El único elemento presentado fue su testimonio, el cual no fue acogido como hecho probado por el foro primario.[11] Por lo cual, no puede imputarse al Municipio un incumplimiento de notificación.

Por lo tanto, es forzoso concluir que, de la prueba presentada, no surge que el Municipio tuviera la obligación de notificar a los apelantes la Resolución Núm. 63 de 2018 por estos no ser parte en el proceso de aprobación de la aludida resolución. En consecuencia,

---

[8] Apéndice 23 del *Recurso de Apelación*, pág. 266.
[9] *Id.*, págs. 272-274.
[10] *Id.*, pág. 274.
[11] A preguntas de su abogado en la vista evidenciaría el apelante indicó lo siguiente:
Lcdo. Edwin Santiago Rivera:
P Por último, Todd, ¿a que distancia está el control de acceso de su residencia?
Testigo – Sr. Todd Swanson:
R Mi casa está directamente... colinda directamente con el vecindario cerrado. La casa detrás de mi casa está dentro del área del cierre. Desde mi propiedad hasta el portón más cercano hay 30 yardas y desde mi propiedad hasta el punto de acceso para vehículos son 80 yardas.
Transcripción de la Prueba Oral (TPO) de la vista celebrada el 24 de octubre de 2024. TPO pág. 35, líneas 11-18.

los errores alegados no se cometieron y la conclusión del TPI de desestimar el recurso de *mandamus* fue la correcta.

**IV.**

Por los fundamentos antes expuestos se confirma la *Sentencia* apelada.

Notifíquese.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones